**ROZIER HARDT MCDONOUGH PLLC**
Travis E. Lynch (SBN 335684)
3621 Vinings Slope, Suite 4300
Atlanta, Georgia 30339
Telephone: (470) 480-9514
Email: lynch@rhmtrial.com
*For Plaintiff FLEET CONNECT SOLUTIONS LLC*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLEET CONNECT SOLUTIONS LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>MOTIVE TECHNOLOGIES, INC. f/k/a KEEP TRUCKIN, INC.,<br><br>    Defendant. | Case No. 3:23-cv-00757<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**Jury Trial Demanded** |

Plaintiff Fleet Connect Solutions LLC ("FCS" or "Plaintiff") files this Complaint against Motive Technologies, Inc. f/k/a Keep Truckin, Inc. ("Motive" or "Defendant") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. This is a patent infringement action to stop Defendant's infringement of the following United States Patents (the "Asserted Patents") issued by the United States Patent and Trademark Office ("USPTO"), a copy of which are attached hereto as **Exhibit A**, **Exhibit B**, **Exhibit C**, **Exhibit D**, and **Exhibit E**:

|    | U.S. Patent No. | Title |
|----|---|---|
| A. | 7,058,040 (the "'040 patent") | Channel Interference Reduction |
| B. | 7,656,845 (the "'845 patent") | Channel Interference Reduction |
| C. | 7,747,291 (the "'291 patent") | Wireless Communication Method |
| D. | 8,494,581 (the "'581 patent") | System And Methods For Management Of Mobile Field Assets Via Wireless Handheld Devices |
| E. | 6,961,586 (the "'586 patent") | Field Assessments Using Handheld Data Management Devices |

2. FCS seeks injunctive relief and monetary damages.

## PARTIES

3. Plaintiff is a limited liability company formed under the laws of Texas with its registered office address located in Austin, Texas.

4. Motive is a limited liability company organized and existing under the laws of the State of Delaware.

5. Motive has its principal place of business at 55 Hawthorne Street, Suite 400, San Francisco, California 94105.

## JURISDICTION AND VENUE

6. FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

7. This is an action for infringement of a United States patent arising under 35 U.S.C. §§

1  271, 281, and 284–285, among others.  This Court has subject matter jurisdiction of the action under
2  28 U.S.C. § 1331 and § 1338(a).

3      8.    Venue is proper against Defendant in this District pursuant to 28 U.S.C. § 1400(b)
4  because it has maintained established and regular places of business in this District and has committed
5  acts of patent infringement in the District.

6      9.    Defendant is subject to this Court's specific and general personal jurisdiction under due
7  process and/or the California Long Arm Statute due at least to Defendant's substantial business in
8  this judicial district, including:  (i) At least a portion of the infringements alleged herein; and (ii)
9  regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving
10 substantial revenue from goods and services provided to individuals in California and in this District.

11     10.    Specifically, Defendant intends to do and does business in, has committed acts of
12 infringement in, and continues to commit acts of infringement in this District directly, and offers its
13 services, including those accused of infringement here, to customers and potential customers located
14 in California, including in this District.

15     11.    Defendant maintains regular and established places of business in this District.

16     12.    Defendant commits acts of infringement in this District, including, but not limited to, use
17 of the Accused Instrumentalities identified below.

**THE ACCUSED INSTRUMENTALITIES**

19     13.    FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set
20 forth in their entirety.

21     1001.    Defendant offers at least the following products (hereinafter, the "Accused
22 Instrumentalities") that infringe one or more claims of the Patents-in-Suit under the brand name
23 "Motive" and/or "Keep Truckin":

- Motive/KeepTruckin Asset Tracking System;
- Motive/KeepTruckin Asset Gateway;
- Motive/KeepTruckin Asset Gateway Dashboard;
- Motive/KeepTruckin Vehicle Gateway;
- Motive/KeepTruckin C-ELD and ELD;


- Motive/KeepTruckin GPS Tracking Application;
- Motive/KeepTruckin app, and associated hardware and software; and
- Other substantially similar products and services offered by Motive in the past or the future.

See **Exhibit F**, **Exhibit G**, **Exhibit H, Exhibit I.**

**14.** Defendant uses the Accused Instrumentalities to perform wireless communications and methods associated with performing and/or implementing wireless communications including, but not limited to, wireless communications and methods pursuant to various communication standards, protocols, and implementations, including, but not limited to, LTE 4G/5G, Bluetooth/IEEE 802.15, and IEEE 802.11 protocols and various subsections thereof (*e.g.,* 802.11ac and 802.11n). See **Exhibit J, Exhibit K.**

**15.** The wireless communcations performed and/or implemented by Defendant using, *e.g.,* the Accused Instrumentalities, among other things, generates and transmits packets for wireless communications and communicate data via a plurality of wireless transceivers using a plurality of wireless protocols, and encode data pursuant to one or more of those wireless protocols. *See id.*

**16.** The wireless communications perform and/or implemented by the Accused Instrumentalities, among other things, transmit data over various media and in overlapping frequencies, compute time slot channels, generate packets for network transmissions, perform or cause to be performed error estimation in orthogonal frequency division multiplexed ("OFDM") receivers, and various methods of processing OFDM symbols. *See id.*

**17.** The Accused Instrumentalities track or cause to be tracked vehicle and cargo locations and hours of service, among other information. *See id.*

**18.** Motive offers its users and customers information to assist in its operation of the Accused Instrumentalities. *See* **Exhibit L**; *see also* Ex. J.

**19.** Motive offers apps for use with its products through Google Play and the Apple Store. *See* **Exhibit M**, **Exhibit N**.

**20.** By way of a letter to Defendant dated August 27, 2020, FCS described its patent portfolio and provided claim charts of a number of its patents comparing representative claims to Defendant's products. Claim charts for three of the Asserted Patents ('040 patent, '845 patent, and '291 patent)

were included in this letter (the "FCS Letter").

**COUNT I: INFRINGEMENT OF U.S. PATENT NO. 7,058,040**

21. FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

22. The USPTO duly issued the '040 patent on June 6, 2006. A true and correct copy of the '040 patent is attached as **Ex. A**.

23. FCS owns all substantial rights, interest, and title in and to the '040 patent, including the sole and exclusive right to prosecute this action and enforce the '040 patent against infringers and to collect damages for all relevant times.

24. The claims of the '040 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting methods of transmitting data over media having overlapping frequencies.

25. The written description of the '040 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

26. Defendant has directly infringed the '040 patent by using, providing, supplying, or distributing the Accused Instrumentalities.

27. Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '040 patent.

28. For example, Defendant uses the Accused Instrumentalities to perform a method for data transmission over first and second media that overlap in frequency. The method includes computing one or more time division multiple access (TDMA) time-slot channels to be shared between the first and second media for data transmission, allocating one or more time-slot channels to the first medium for data transmission, allocating one or more of the remaining time-slot channels to the second medium for data transmission; and dynamically adjusting a number of time-slot channels assigned to one of the first and second media during the data transmission to remain within limits of a desired

level of service.

29. Since at least the time of receiving the FCS Letter in August of 2020, Defendant has also indirectly infringed one or more claims of the '040 patent by inducing others to directly infringe said claims. Defendant has induced end-users, including, but not limited to, its employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '040 patent by providing or requiring use of the Accused Instrumentalities. Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Instrumentalities in a manner that infringes one or more claims of the '040 patent, including, for example, Claim 1. Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Instrumentalities in an infringing manner; advertising and promoting the use of the Accused Instrumentalities in an infringing manner; or distributing instructions that guide users to use the Accused Instrumentalities in an infringing manner. Defendant performed these steps, which constitute induced infringement with the knowledge of the '040 patent and with the knowledge that the induced acts constitute infringement. Defendant was aware that the normal and customary use of the Accused Instrumentalities by others would infringe the '040 patent. Motive's inducement is ongoing. *See* Ex. J, Ex. K, Ex. L.

30. Since at least the time of receiving the FCS Letter in August of 2020, Defendant has also indirectly infringed by contributing to the infringement of the '040 patent. Defendant has contributed to the direct infringement of the '040 patent by its personnel, contractors, and customers. The Accused Instrumentalities have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '040 patent, including, for example, Claim 1. The special features constitute a material part of the invention of one or more of the claims of the '040 patent and are not staple articles of commerce suitable for substantial non-infringing use. *See* Ex. M, Ex. N.

31. Defendant has had knowledge of the '040 Patent since at least the time it received the FCS Letter in August of 2020, when it was provided with a chart comparing one of more of the Accused Instrumentalities to a claim of the '040 patent.

32. Furthermore, on information and belief, Defendant has a policy or practice of not

reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of FCS's patent rights.

33. Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

34. Defendant's infringement of the '040 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of FCS's rights under the patent.

35. FCS has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. FCS has and will continue to suffer this harm by virtue of Defendant's infringement of the '040 patent. Defendant's actions have interfered with and will interfere with FCS's ability to license technology. The balance of hardships favors FCS's ability to commercialize its own ideas and technology. The public interest in allowing FCS to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

36. FCS has been damaged as a result of the infringing conduct by Defendant alleged above. Defendant is liable to FCS in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

37. FCS or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '040 patent.

**COUNT II: INFRINGEMENT OF U.S. PATENT NO. 7,656,845**

38. FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

39. The USPTO duly issued the '845 patent on February 2, 2010. A true and correct copy of the '845 patent is attached as **Ex. B**.

40. FCS owns all substantial rights, interest, and title in and to the '845 patent, including the sole and exclusive right to prosecute this action and enforce the '845 patent against infringers and to collect damages for all relevant times.

41. The claims of the '845 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive

components that improve upon the function and operation of preexisting data transmission methods using dynamic adjustment of data channels.

42. The written description of the '845 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

43. Defendant has directly infringed the '845 patent by using, providing, supplying, or distributing the Accused Instrumentalities.

44. Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '845 patent.

45. For example, Defendant uses the Accused Instrumentalities to perform a method that includes a base station allocating at least one of a plurality of data channels to a first medium for data transmission via a wireless device, the base station allocating at least one remaining data channel of the plurality of data channels to a second medium for data transmission via the wireless device, and the base station dynamically adjusting, during data transmission, a number of the data channels assigned to one of the first and second media to remain within limits of a desired level of service.

46. Since at least the time of receiving the FCS Letter in August of 2020, Defendant has also indirectly infringed one or more claims of the '845 patent by inducing others to directly infringe said claims. Defendant has induced end-users, including, but not limited to, its employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '845 patent by providing or requiring use of the Accused Instrumentalities. Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Instrumentalities in a manner that infringes one or more claims of the '845 patent, including, for example, Claim 1. Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Instrumentalities in an infringing manner; advertising and promoting the use of the Accused Instrumentalities in an infringing manner; or distributing instructions that guide users to use the Accused Instrumentalities in an infringing manner. Defendant performed these steps, which constitute induced infringement with the knowledge of the

'845 patent and with the knowledge that the induced acts constitute infringement. Defendant was aware that the normal and customary use of the Accused Instrumentalities by others would infringe the '845 patent. Defendant's inducement is ongoing. *See* Ex. J, Ex. K, Ex. L.

47. Since at least the time of receiving the FCS Letter in August of 2020, Defendant has also indirectly infringed by contributing to the infringement of the '845 patent. Defendant has contributed to the direct infringement of the '845 patent by its personnel, contractors, and customers. The Accused Instrumentalities have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '845 patent, including, for example, Claim 1. The special features constitute a material part of the invention of one or more of the claims of the '845 patent and are not staple articles of commerce suitable for substantial non-infringing use. *See* Ex. M, Ex. N.

48. Defendant has had knowledge of the '845 Patent since at least the time it received the FCS Letter in August of 2020, when it was provided with a chart comparing one of more of the Accused Instrumentalities to a claim of the '845 patent.

49. Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of FCS's patent rights.

50. Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

51. Defendant's infringement of the '845 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of FCS's rights under the patent.

52. FCS has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. FCS has and will continue to suffer this harm by virtue of Defendant's infringement of the '845 patent. Defendant's actions have interfered with and will interfere with FCS's ability to license technology. The balance of hardships favors FCS's ability to commercialize its own ideas and technology. The public interest in allowing FCS to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

53. FCS has been damaged as a result of the infringing conduct by Defendant alleged above.

1. Defendant is liable to FCS in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

54. FCS or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '845 patent.

**COUNT III: INFRINGEMENT OF U.S. PATENT NO. 7,747,291**

55. FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

56. The USPTO duly issued the '291 patent on June 29, 2010. A true and correct copy of the '291 patent is attached as **Ex. C**.

57. FCS owns all substantial rights, interest, and title in and to the '291 patent, including the sole and exclusive right to prosecute this action and enforce the '291 patent against infringers and to collect damages for all relevant times.

58. The claims of the '291 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting methods and systems for mobile vehicle-based communications systems utilizing short-range communication links.

59. The written description of the '291 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

60. Defendant has directly infringed the '291 patent by using, providing, supplying, or distributing the Accused Instrumentalities.

61. Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '291 patent.

62. For example, Defendant uses the Accused Instrumentalities to perform a method of wirelessly interconnecting a vehicle with a mobile unit and a website. The method includes broadcasting a short range communication link from the vehicle comprising a transceiver to the

mobile unit wherein the short range communication link is a first communication link; determining by the vehicle if the first communication link with the mobile unit is authorized; establishing a second communication link between the vehicle and the website; receiving a communication from the mobile unit, by the vehicle, the communication comprising information to be stored at the website; uploading the communication from the vehicle to the website; receiving by the vehicle a confirmation that the communication was received by the website; and sending the confirmation from the vehicle to the mobile unit.

63. Since at least the time of receiving the FCS Letter in August of 2020, Defendant has also indirectly infringed one or more claims of the '291 patent by inducing others to directly infringe said claims. Defendant has induced end-users, including, but not limited to, its employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '291 patent by providing or requiring use of the Accused Instrumentalities. Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Instrumentalities in a manner that infringes one or more claims of the '291 patent, including, for example, Claim 1. Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Instrumentalities in an infringing manner; advertising and promoting the use of the Accused Instrumentalities in an infringing manner; or distributing instructions that guide users to use the Accused Instrumentalities in an infringing manner. Defendant performed these steps, which constitute induced infringement with the knowledge of the '291 patent and with the knowledge that the induced acts constitute infringement. Defendant was aware that the normal and customary use of the Accused Instrumentalities by others would infringe the '291 patent. Defendant's inducement is ongoing. *See* Ex. J, Ex. K, Ex. L.

64. Since at least the time of receiving the FCS Letter in August of 2020, Defendant has also indirectly infringed by contributing to the infringement of the '291 patent. Defendant has contributed to the direct infringement of the '291 patent by its personnel, contractors, and customers. The Accused Instrumentalities have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '291 patent, including, for example, Claim 1. The special features constitute a material part of the

invention of one or more of the claims of the '291 patent and are not staple articles of commerce suitable for substantial non-infringing use. *See* Ex. M, Ex. N.

65. Defendant has had knowledge of the '291 Patent since at least the time it received the FCS Letter in August of 2020, when it was provided with a chart comparing one of more of the Accused Instrumentalities to a claim of the '291 patent.

66. Furthermore, on information and belief, Defendant had a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus was willfully blind of FCS's patent rights.

67. Defendant's actions were at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

68. Defendant's infringement of the '291 patent has been willful, intentional, deliberate, or in conscious disregard of FCS's rights under the patent.

69. FCS has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. FCS has and will continue to suffer this harm by virtue of Defendant's infringement of the '291 patent. Defendant's actions have interfered with FCS's ability to license technology. The balance of hardships favors FCS's ability to commercialize its own ideas and technology. The public interest in allowing FCS to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

70. FCS has been damaged as a result of the infringing conduct by Defendant alleged above. Defendant is liable to FCS in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

71. FCS or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '291 patent.

**COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 8,494,581**

72. FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

73. The USPTO duly issued the '581 patent on July 23, 2013. A true and correct copy of the

'581 patent is attached as **Ex. D**.

74. FCS owns all substantial rights, interest, and title in and to the '581 patent, including the sole and exclusive right to prosecute this action and enforce the '581 patent against infringers and to collect damages for all relevant times.

75. The claims of the '581 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting methods and systems of collecting and communicating field data based on geographical location.

76. The written description of the '581 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

77. Defendant has directly infringed the '581 patent by using, providing, supplying, or distributing the Accused Instrumentalities.

78. Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '581 patent.

79. For example, Defendant uses the Accused Instrumentalities to perform a method that using a handheld device to access an assessment program stored in a memory of a computing device located geographically remote from the handheld device, the assessment program being configured to enable a field assessment in a specific industry; collecting field data associated with the field assessment using the handheld device in response to the assessment program; using the handheld device to determine a geographical location of the handheld device; and communicating the field data collected using the handheld device and the geographical location of the handheld device to the computing device.

80. FCS has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. FCS has suffered this harm by virtue of Defendant's infringement of the '581 patent. Defendant's actions have interfered with and will interfere with FCS's ability to license technology. The balance of hardships favors FCS's ability to commercialize

its own ideas and technology. The public interest in allowing FCS to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

81. FCS has been damaged as a result of the infringing conduct by Defendant alleged above. Defendant is liable to FCS in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

82. FCS or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '581 patent.

**COUNT V: INFRINGEMENT OF U.S. PATENT NO. 6,961,586**

83. FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

84. The USPTO duly issued the '586 patent on November 1, 2005. A true and correct copy of the '586 patent is attached as **Ex. E**.

85. FCS owns all substantial rights, interest, and title in and to the '586 patent, including the sole and exclusive right to prosecute this action and enforce the '586 patent against infringers and to collect damages for all relevant times.

86. The claims of the '586 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting methods and systems for assessing remotely performed functions using positioning and navigation functionalities.

87. The written description of the '586 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

88. Defendant has directly infringed the '586 patent by using, providing, supplying, or distributing the Accused Instrumentalities.

89. Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 28 of the '586 patent.

90. For example, Defendant uses the Accused Instrumentalities to perform a method of conducting an assessment of a field problem by an assessor utilizing a handheld data management device, comprising: obtaining direction to a field problem to conduct a field assessment for at least one of: construction industry project analysis, HVAC system analysis; project management, equipment readiness, system and equipment troubleshooting, remote inventory tracking and ordering, conducting legal investigations in the field, and multi-users remote function coordination using positioning and navigation means provided through said handheld data management device; starting an assessment program associated with the field problem; providing specific information required by the assessment program and related to the field problem; analysis of said specific information by said handheld data management device; and rendering output by said handheld data management device for use in support of said field problem.

91. FCS has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. FCS has suffered harm by virtue of Defendant's infringement of the '586 patent. Defendant's actions have interfered with FCS's ability to license technology. The balance of hardships favors FCS's ability to commercialize its own ideas and technology. The public interest in allowing FCS to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

92. FCS has been damaged as a result of the infringing conduct by Defendant alleged above. Defendant is liable to FCS in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

93. FCS or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '586 patent.

**JURY DEMAND**

FCS hereby requests a trial by jury on all issues so triable by right.

**PRAYER FOR RELIEF**

FCS requests that the Court find in its favor and against Defendant, and that the Court grant FCS the following relief:

a. Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendant or others acting in concert therewith;

b. A permanent injunction enjoining Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the '040 and '845 patents or, in the alternative, an award of a reasonable ongoing royalty for future infringement of the '040 and '845 patents by such entities;

c. Judgment that Defendant accounts for and pay to FCS all damages to and costs incurred by FCS because of Defendant's infringing activities and other conduct complained of herein;

d. Judgment that Defendant's infringements be found willful as to the '040, '845, and '291 patents, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e. Pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

f. That this Court declare this an exceptional case and award FCS its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g. All other and further relief as the Court may deem just and proper under the circumstances.

| | | |
|---|---|---|
| DATED: <u>February 20, 2023</u> | | Respectfully submitted, |
| | | <u>/s/ Travis E. Lynch</u> |
| | | Travis E. Lynch (SBN 335684)<br>**ROZIER HARDT MCDONOUGH PLLC**<br>3621 Vinings Slope, Suite 4300<br>Atlanta, Georgia 30339<br>Telephone: (470) 480-9514<br>Email: lynch@rhmtrial.com |
| | | *Attorneys for Plaintiff*<br>*FLEET CONNECT SOLUTIONS LLC* |

**Exhibits**
- A. U.S. Patent No. 7,058,040
- B. U.S. Patent No. 7,656,845
- C. U.S. Patent No. 7,747,291
- D. U.S. Patent No. 8,494,581
- E. U.S. Patent No. 6,961,586
- F. Webpage: https://gomotive.com
- G. Webpage: https://gomotive.com/products/fleet-compliance/
- H. Webpage: https://gomotive.com/products/tracking-telematics/
- I. Webpage: https://gomotive.com/products/tracking-telematics/gps-vehicle-tracking/
- J. Webpage: Motive Help Center - How to connect mobile device to the Vehicle Gateway/ELD
- K. Webpage: https://gomotive.com/products/wifi-hotspot/
- L. Webpage: https://gomotive.com/guides/
- M. App offered through Google Play
- N. App offered through the Apple Store